```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
CLAIRE MCCARTHY-O'KEEFE,                                                :
                                                                        :
                            Plaintiff,                                  :    13-CV-4785 (JMF)
                                                                        :
               -v-                                                      :    OPINION AND ORDER
                                                                        :
LOCAL 298/851 IBT EMPLOYER GROUP PENSION                                :
TRUST FUND (SAVASTA & CO.), et al.,                                     :
                                                                        :
                            Defendants.                                 :
                                                                        :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/24/2015

JESSE M. FURMAN, United States District Judge:

Plaintiff Claire McCarthy-O'Keefe ("Plaintiff"), proceeding *pro se*, brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, against Defendants Local 295/Local 851 IBT Employer Group Pension Trust Fund (the "Fund"), Local 295/851 IBT Board of Trustees (the "Board"), and DHL Express ("DHL"), alleging that the Fund and the Board incorrectly calculated her pension benefits. Defendants now move for summary judgment. For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

The following facts, taken from the Amended Complaint and the admissible materials submitted by the parties, are viewed in the light most favorable to Plaintiff, as she is the non-moving party. *See, e.g.*, *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157-58 (2d Cir. 2012).

Plaintiff was first hired by Airborne Express ("Airborne") — later to become DHL — in October 1988. (Am. Compl. (Docket No. 11) ¶ 16; Defs.' Local Rule 56.1 Statement Undisputed Material Facts Supp. Mot. Summ. J. (Docket No. 46) ("Defs.' 56.1 Statement") ¶ 3).

As an employee of both Airborne and DHL, Plaintiff was a member of the Local 295/Local 851 Union of the International Brotherhood of Teamsters (the "Union"). (Defs.' 56.1 Statement ¶ 4; Am. Compl. ¶ 16). Airborne and DHL both contributed to the Fund, which provides pension and disability benefits to employees covered by collective bargaining agreements between several employers and the Union. (Defs.' 56.1 Statement ¶¶ 1, 4). The Fund is administered by the Board, which distributes pension and disability benefits according to the terms of a written pension plan document (the "Plan"). (*Id.* ¶ 2; Decl. Linda Kellner (Docket No. 45) ("Kellner Decl."), Ex. 1).

When Plaintiff was first hired, she was classified as a part-time employee (Defs.' 56.1 Statement ¶ 5; Kellner Decl., Ex. 8 at 1), and was consequently assigned "Level 2" status for the purposes of calculating her pension benefits under the version of the Plan in effect on her hiring date. (Am. Compl. ¶ 2). As a Level 2 employee (also termed a "Tier 2 employee" (*see* Kellner Decl., Ex 1 § 4.1(d)(3)(B))), Plaintiff's pension benefits were calculated at a rate lower than that of Level 1 employees. (Am. Compl. ¶ 2; *id.*, Ex. A at 1, 4). That version of the Plan was superseded in 1994 by a collective bargaining agreement ("CBA") that specified that part-time employees were not eligible for participation in the Fund, but rather would receive a $1,500 annuity for each year of employment. (Kellner Decl., Ex. 2 at 40). In 2002, the 1994 CBA was itself superseded by an amended and restated version of the Plan. (Defs.' 56.1 Statement ¶ 7). The 2002 version — currently in effect — also created a two-tiered system for calculating retirement benefits, but replaced the 1988 Plan's Tier 1/Tier 2 distinction with one based explicitly on an employee's full-time or part-time status, granting employees $115 per month in retirement benefits for each year of service as a full-time employee and $50 per month for each year of service as a part-time employee. (Defs.' 56.1 Statement ¶ 9; Kellner Decl. Ex. 1 §

4.4(b)). The Plan further stipulates that any participant who becomes "Permanently Disabled" will receive a monthly benefit equal to the retirement benefit to which he or she would have been entitled. (Defs.' 56.1 Statement ¶ 8).

In August 1995, Plaintiff — still classified as a part-time employee — brought a grievance alleging that her seniority status had been violated by her enrollment in the Plan as a Level 2 (or "Tier 2") participant, as staff members junior to her had been granted Level 1 status. (Am. Compl. ¶ 2, Ex. B). The Union and DHL eventually settled Plaintiff's grievance by upgrading Plaintiff to Tier 1 status "for all purposes," with full-time wages retroactive to January 1, 1996. (*Id.*, Ex. C). The settlement further specified that "[Plaintiff's] pension will be rolled over to the union plans effective as soon as practical," and that Plaintiff's "[p]ension is at the full pension rate." (*Id.* ¶ 19, Ex. C; Defs.' 56.1 Statement ¶ 12).

Plaintiff became disabled effective July 9, 2009, and began collecting a disability pension benefit of $1,405.40 per month, effective October 1, 2010, which she first received on January 1, 2011. (*Id.* ¶ 13; Am. Compl., Ex. D). Plaintiff's disability benefit was calculated as follows: (1) for the period from her date of hire in 1988 through December 1995, at the part-time rate of $50 per month for each year of part-time credited service; (2) for the period from January 1996 through June 2009, at the full-time rate of $115 per month for each year of full-time credited service; and (3) for the period from July 2009 to September 2009, at the full-time rate of $60 per month. (Defs.' 56.1 Statement ¶ 14; Kellner Decl., Ex. 8).

On February 20, 2011, Plaintiff wrote to the Fund to appeal her pension calculation, asserting that "the years of Credited Benefit Service and the amount that I was awarded are incorrect." (*Id.*, Ex. 7; Am. Compl. ¶ 22). After being asked to provide more detail on what she felt was incorrect (Kellner Decl., Ex. 6), Plaintiff responded with a letter dated May 2, 2011, in

3

which she wrote: "I have been disputing my pension for a very long time.  I feel that it is not fair that junior people have or will be afforded a bigger pension amount than me. . . .  My hire date, 10/11/88, should have afforded me a Tier 1 pension . . . .  My [1996] grievance regarding my Tier 1 status afforded me a Tier 1 pension from my hire date."  (Kellner Decl., Ex. 5 ("Pl.'s May 2, 2011 Ltr.")).

In a letter dated May 19, 2011, Linda Kellner, Executive Vice-President of Savasta and Company, Inc. — which serves as a third-party administrator to the Fund (*id.* ¶ 1) — instructed Plaintiff that the Board would review her appeal at the next scheduled meeting.  (*Id.*, Ex. 4 ("Kellner's May 19, 2011 Ltr.")).  The letter further told Plaintiff that she was "entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to [her] claim" and that she could also "submit additional written comments, documents, records, and other information relating to the claim for the Board of Trustees to review."  (Kellner's May 19, 2011 Ltr.).

The Board considered and denied Plaintiff's appeal at its July 13, 2011 meeting.  (Am. Compl. ¶ 23; Defs.' 56.1 Statement ¶ 18).  Two days later, Linda Kellner wrote to Plaintiff regarding the decision, explaining the Board's denial as follows:

> Prior to your grievance to Local 851 in 1996, you were employed as a part-timer.  Your grievance award was to roll you over to the union plans as soon as practical granting you the full pension rate.  The award did not make your union plan participation retroactive to your date of hire.  Therefore, your credit prior to January 1996 is based on your part-time employment status and your pension benefit is calculated accordingly.

(Am. Compl., Ex. E).  Thereafter, Plaintiff filed this lawsuit challenging the Board's decision.  (Docket No. 1).  Defendants now move for summary judgment.  (Docket No. 43).  In addition to opposing Defendants' motion, Plaintiff filed her own motion seeking to "amend and/or supplement the administrative record." (Docket No. 51).

4

## LEGAL STANDARDS

### A. The Summary Judgment Standard

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs,* 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 83 (2d Cir. 2004).  To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.  v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the

allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

When a summary judgment motion is brought against a *pro se* litigant, as here, the Court must afford the non-movant with "special solicitude" in the construction of pleadings and motions and in the enforcement of procedural rules. *See Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010) ("[I]n light of the particular difficulties presented by a motion for summary judgment . . . a district court errs by failing to advise a *pro se* litigant of the nature of such a motion and the consequences of failing to respond to it properly . . ."). That special solicitude, however, does not "relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Specifically, a *pro se* Plaintiff opposing summary judgment must still "come forward with evidence demonstrating that there is a genuine dispute regarding material fact." *Bennett v. Bailey*, No. 07-CV-7002 (PKC), 2010 WL 1459192, at *3 (S.D.N.Y. Apr. 9, 2010).

**B.  The Standard of Review for ERISA Claims**

In reviewing a denial of benefits challenged under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), a court must apply a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court must apply an abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *accord Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009). In order to trigger the abuse of discretion standard, a benefit plan must use "clear language" to indicate that the administrators reserve

discretion to interpret and apply the plan.  *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 (2d Cir. 2005); *accord Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654, 658 (2d Cir. 2013).  Plaintiff does not dispute that that is the case here (*see, e.g.*, Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J. (Docket No. 49) ("Pl.'s Mem.") ¶ 6), and that is for good reason, as the Plan provides that the Board retains "the exclusive right, power, and authority, in its sole and absolute discretion, to administer, apply and interpret the Plan" and that "benefits under the Plan will be paid only if the Board decides in its discretion that the applicant is entitled to them."  (Kellner Decl., Ex. 1 § 8.3).  Accordingly, the Court will review the Board's decision for abuse of discretion, and "may overturn" the Board's decision "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995) (internal quotation marks omitted).  Substantial evidence is "such evidence that a reasonable mind must accept as adequate to support the conclusion reached by the decision maker and requires more than a scintilla [of evidence] but less than a preponderance."  *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal quotation marks omitted).

## DISCUSSION

**A.  Plaintiff's Motion To Supplement the Administrative Record**

As a threshold matter, the Court must decide what materials it may consider on summary judgment.  In general, a court's review of a plan administrator's disability determination under Section 502(a)(1)(B) of ERISA is limited to the "administrative record," which is comprised of all information and material that was before the administrator when it considered the plaintiff's request for benefits.  *See, e.g.*, *Miller*, 72 F.3d at 1071; *Wedge v. Shawmut Design & Constr. Grp. Long Term Disability Ins. Plan*, 23 F. Supp. 3d 320, 337 (S.D.N.Y. 2014).  In this case,

7

however, Plaintiff moves "to amend and/or supplement the administrative record," arguing that the Court should also consider "Defendants['] own discovery" and "Rebuttal Evidence offered in Plaintiff's Opposition to Summary Motion."  (Mot. To Amend and/or Supplement Administrative R. (Docket No. 51) ("Pl.'s Mot.") ¶¶ 1-3).

Courts in this Circuit are split on whether a court may grant such a motion when reviewing a plan administrator's decision under the abuse-of-discretion standard.  Some have held that a court may consider material outside the administrative record upon a plaintiff's showing of "good cause," *see Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F. Supp. 2d 651, 658-59 (S.D.N.Y. 2011), while others have held that the "good cause" standard applies only when a court reviews a plan administrator's decision *de novo*, *see Baird v. Prudential Ins. Co. of Am.*, No. 09-CV-7898 (PGG), 2010 WL 3743839, at *8 (S.D.N.Y. Sept. 24, 2010), *aff'd*, 458 F. App'x 39 (2d Cir. 2012).  Regardless, the Second Circuit has clarified that an administrator's conflict of interest does not constitute *per se* good cause to expand the administrative record in reviewing an ERISA claim, on the theory that holding otherwise would "undermine the significant ERISA policy interest[] of . . . ensuring prompt claims-resolution procedures" and "eliminate the appropriate incentive for a claimant to submit all available evidence" when first submitting a claim.  *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 294-95 (2d Cir. 2004).  Instead, in order to establish good cause to review evidence outside of the administrative record, "'Plaintiff must demonstrate a conflict of interest *as well as some additional factor*, such as lack of established criteria for determining an appeal, a practice of destroying or discarding all records within minutes after hearing an appeal, or a failure to maintain written procedures for claim review.'"  *Boison v. Ins. Servs. Office, Inc.*, 829 F. Supp. 2d 151, 160 (E.D.N.Y. 2011) (quoting *Locher*, 389 F.3d at 293, 296).

Plaintiff has not made such a showing. Plaintiff's most compelling argument is her suggestion that Kellner "withheld" from the Board that Kellner herself believed Plaintiff was miscoded as a part-time employee when she was hired in 1988. (Pl.'s Mot. ¶ 12; *see also* Pl.'s Affirmation Supp. Mot. Amend and/or Supplement Administrative R. (Docket No. 56) 11; Pl.'s Mem. 46). The problem with that argument, however, is that Plaintiff's appeal to the Board that is subject to review here was not based on how she was coded during her employment with Airborne; as Plaintiff herself admits, that issue was the subject of Plaintiff's grievance in 1995, which was resolved by the settlement in 1996. (*See* Pl.'s May 2, 2011 Ltr.). Instead, as discussed below, Plaintiff's appeal to the Board was limited — and the issue in here is thus limited, in turn — to whether the Board erred in interpreting the terms of that settlement as not granting Plaintiff a full-time pension retroactive to 1988. Plaintiff, having been aware that she was classified as a part-time employee from 1988 to 1996 for pension purposes (Am. Compl., Ex. D), and having been advised that she was free to submit any evidence in support of her appeal (*see* Kellner May 19, 2011 Ltr. (advising Plaintiff of her right to "submit additional written comments, documents, records, and other information relating to the claim for the Board of Trustees to review")), cannot now, years later, insist on expanding the record for purposes of relitigating her earlier grievance. *Cf. Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (finding that the plaintiff did not show "'good cause' to admit additional evidence" because the administrator gave the plaintiff "ample time to submit additional materials").

## B. Defendants' Motion for Summary Judgment

Turning to the merits and applying the highly deferential abuse-of-discretion standard, there is no basis to disturb the Board's decision, as it was altogether reasonable and certainly supported by substantial evidence. Notably, although Plaintiff submits pages of correspondence

9

(spanning over a decade and referencing many grievances not at issue here), she herself admits that her claim on appeal was (and is now) "extremely simple." (Pl.'s Affirmation Opp'n Defs.' Mot. Summ. J. (Docket No. 50) ("Pl.'s Affirmation") 2). Specifically, as Plaintiff herself framed it, the Board was tasked with answering the narrow question of whether the 1996 settlement awarded Plaintiff a higher pension rate retroactive to her hiring date. (Kellner Decl., Ex. 3; *see also id.*, Ex. 5 ("My [1996] grievance regarding my Tier 1 status afforded me a Tier 1 pension from my hire date.")). The Board's conclusion that the settlement did not provide for such retroactive relief is likely correct, and certainly reasonable, as the text of the settlement merely stated that Plaintiff's pension "will be rolled over to the union plans effective as soon as practical" and gave no indication that the new pension rate should apply back to Plaintiff's date of hire in 1988. (Kellner Decl., Ex. 10). Plaintiff offers alternative readings of the settlement language (*see, e.g.*, Pl's Affirmation 3), but — however plausible those readings may be — they are ultimately unavailing. The Board's interpretation was part and parcel of its decision to deny Plaintiff additional benefits, which cannot be second guessed merely because another decision maker could have plausibly arrived at a different conclusion; instead, the Board's decision can be overturned only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law," which it was not. *Holley v. Empire State Carpenters Pension Plan*, 865 F. Supp. 2d 352, 354 (W.D.N.Y. 2012) (internal quotation marks omitted); *cf. Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92-93 (2d Cir. 2000) (stating that an administrator's interpretation controls "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions" (internal quotation marks omitted)).

      In arguing that an issue of fact exists as to whether the Board's decision was arbitrary and capricious, Plaintiff asserts that the Fund "is hardly a neutral decision-making body" because it

and the Board are tasked with determining an employee's eligibility for benefits under the Plan and paying out those same benefits. (Pl.'s Mem. ¶¶ 1, 4, 6). Plaintiff is correct that the Fund's status as both evaluator and payer of benefits qualifies as a conflict of interest to be considered by the Court, even though the Board is comprised evenly of union representatives and employer representatives and is administered by a third party, as "the evaluation of claims is entrusted (at least in part) to representatives of the [employers] that ultimately pay the claims allowed." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010). In determining whether an administrator's decision was affected by a conflict of interest, an issue "distinct from the reasonableness of the plan administrators' decision," this Court "will not be confined to the administrative record." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 174 (2d Cir. 2001); *see also Trussel v. Cigna Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008). Accordingly, for the limited purpose of conducting the conflict-of-interest inquiry, the Court may — and will — consider evidence that it declined to consider for the purposes of evaluating the Board's determination as a whole.

Evidence of a plan administrator's conflict of interest, however, does not disturb the deferential standard of review afforded to the administrator's exercise of discretion in determining an employee's benefits eligibility; instead, a "reviewing judge [must] take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *accord McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 128 (2d Cir. 2008). Nor does evidence of a conflict of interest warrant an automatic finding of abuse of discretion; instead, "[a] plaintiff's showing that the administrator's conflict of interest affected the choice of a reasonable interpretation is only one of several different considerations that judges must take into account" in determining

11

whether a benefits denial constituted an abuse of discretion, *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009) (internal quotation marks omitted), and the weight a court properly affords to such a conflict is "in direct proportion to the likelihood that the conflict affected the benefits decision," *Tortora v. SBC Commc'ns, Inc.*, 739 F. Supp. 2d 427, 441 (S.D.N.Y. 2010), *aff'd*, 446 F. App'x 335 (2d Cir. 2011) (internal quotation marks and alteration omitted). "Evidence that a conflict affected a decision may be categorical (such as a history of biased claims administration) or case specific (such as an administrator's deceptive or unreasonable conduct) . . . ." *Durakovic*, 609 F.3d at 140 (internal quotation marks omitted).

The Fund's conflict of interest has no bearing on the reasonableness of its decision in this case. First, the fact that the Board's reading of the 1996 settlement was rational — and even correct — diminishes the significance of any conflict of interest. After all, "[w]hile a conflict of interest may act as a tiebreaker when other factors are closely balanced . . . the existence of a conflict cannot transform an accurate interpretation of a plan provision into an arbitrary act." *Varney v. Verizon Commc'ns, Inc.*, No. 07-CV-695 (LDW) (AKT), 2013 WL 1345211, at *15 (E.D.N.Y. Mar. 1, 2013) (internal quotation marks omitted), *aff'd*, 560 F. App'x 98 (2d Cir. 2014). Second, and relatedly, there is little or no evidence that the Fund's conflict affected its decision, and "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic*, 609 F.3d at 140. Plaintiff contends that the Fund was biased because it knew that additional pension benefits for the period from 1988 to 1996 would not be supported by contributions from Plaintiff's employer and thus would likely have to be paid using Fund contributions from other employers. (*See* Pl.'s Affirmation 5, 8). But to make that contention is merely to restate the conflict of interest that is present in all cases in which a fund serves as both evaluator and payer, where any "rejection of claims will

12

reduce future employer contributions." *Durakovic*, 609 F.3d at 139. Plaintiff also cites communications by Kellner and Board member Thomas Conelias as evidence of "deceptive or unreasonable conduct." (Pl.'s Affirmation 2; Pl.'s Mem. 22, 25, 47). But that evidence is not strong enough, or tied closely enough to the issue under review (as opposed to, say, whether Plaintiff was properly coded prior to the 1996 settlement of her grievance), to weigh heavily in the balance, especially given the lack of evidence that the Fund had a "history of biased claims administration" or that the Board "unreasonably relied" on evidence favorable to its financial interests while discarding contrary evidence in the administrative record. *Durakovic*, 609 F.3d at 140. Accordingly, notwithstanding the Fund's conflict of interest, the Court concludes that no rational jury could view Defendants' denial of Plaintiff's appeal as arbitrary and capricious, and thus Defendants are entitled to summary judgment.[1]

## CONCLUSION

The Court has reviewed all of Plaintiff's arguments and finds them to be without merit. Accordingly, and for the reasons stated above, Plaintiff's motion to supplement the administrative record is DENIED, Defendants' motion for summary judgment is GRANTED, and the Amended Complaint is dismissed.

---

[1] The Court declines to consider Plaintiff's argument in opposition to summary judgment that Defendants breached their fiduciary duties in handling her claim because she did not make any such allegations in her Amended Complaint. *See, e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (providing that district courts are "justified in brushing aside further argument not alleged in [the] complaint but raised for the first time in opposition to summary judgment" (internal quotation marks and alteration omitted)).

The Clerk of Court is directed to terminate Docket Nos. 43 and 51 and to close the case.

The Clerk of Court is further directed to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Date: February 24, 2015
New York, New York

JESSE M. FURMAN
United States District Judge